UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.: 07-111 (RMU) |
| | : | |
| v. | : | |
| | : | |
| MAURICE KERRICK | : | |
| Defendant. | : | |
| _____ | : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby files its opposition to the defendant's Motion to Suppress Physical Evidence in the above-captioned case. In support of this opposition, the United States submits the following points and authorities in addition to such further evidence as may be referenced at any hearing on this matter:

FACTS

On July 17, 2006 members of the Capital Area Regional Task Force ("CARTF") executed an arrest warrant from Price Georges County, Maryland for charging attempted murder for the defendant at 4111 Ames Street, NE, Washington, DC, apartment number 203. That apartment is rented by the defendant's father Maurice Kerrick, Sr. When members of CARTF arrived on the block, Mr. Kerrick, Sr. advised them that his son, the defendant, was indeed staying with him in apartment number 203. The CARTF members then entered the apartment, found the defendant sitting in a recliner in the living, and placed him under arrest. After searching the defendant and placing him in handcuffs, the defendant was brought over to the living room couch so that he could be seated while the CARTF members obtained additional

information from Mr. Kerrick, Sr.  Before the defendant sat on the couch, the CARTF members did a protective sweep of the couch cushions to ensure that there were no weapons or dangerous objects that the defendant could get a hold of while sitting on the couch.  In doing the protective sweep of the couch the CARTF members discovered a .380 caliber semi-automatic handgun loaded with 8 rounds of ammunition underneath one of the couch cushions.

      The CARTF members then learned from Mr. Kerrick Sr., that he was the leaseholder of the apartment and that the defendant had been staying with him in his apartment for about one month.  Mr. Kerrick, Sr. then showed the CARTF members the bedroom where the defendant had been staying.  The CARTF members then obtained from Mr. Kerrick, Sr. a consent to search the apartment and the bedroom where the defendant had been staying.  The CARTF members searched the bedroom where the defendant had been staying and found (1) an SKS assault rifle underneath a futon mattress; (2) the following items on top of an entertainment center and in plain view: (a) approximately 282 grams of crack cocaine, (b) 73.8 grams of marijuana (c) a box containing 42 rounds of .380 caliber ammunition, and (d) empty ziplock bags and razor blades; and (3) a high capacity magazine feeding device in the corner of the bedroom near the entertainment center on top of a box.

      The defendant now asks this Court to suppress the physical evidence recovered by the CARTF members.  The defendant argues that the search of the couch in the living room is invalid because it went beyond the scope of a "protective sweep", and that the consent given by the defendant's father to search the bedroom where the defendant had been staying was invalid.  Both of these arguments fail, however, as a matter of law for the reasons articulated below.

## ARGUMENT

I.  **The Evidence Obtained From the Apartment Was Validly Recovered and Should be Admitted**

The evidence obtained from the living room couch as the result of a protective sweep was validly recovered and should be admitted pursuant to the Supreme Court holding in <u>Maryland v. Buie</u>, 494 U.S. 325 (1990).  The evidence obtained from the bedroom where the defendant had been staying was validly recovered after the leaseholder of the apartment, Mr. Kerrick, Sr., freely and voluntarily consented to a search of the bedroom.  <u>See</u> <u>Florida v. Royer</u>, 460 U.S. 491, 497 (1983).  Alternative, even without Mr. Kerrick, Sr.'s consent the CARTF members would have been able to search the bedroom where the defendant had been staying as part of a limited protective sweep that is permissible under <u>Buie</u>.  Finally, the defendant lacked a reasonable expectation of privacy in the entire apartment, and therefore has no standing to challenge the evidence obtained in the apartment.

    A.    <u>Buie</u> **Permits, Without Probable Cause or Reasonable Suspicion, The Protective Sweep Of Areas Adjoining The Defendant's Arrest**

The CARTF members limited protective sweep of the living room couch yielded the discovery of the loaded .380 caliber semi-automatic handgun underneath the couch cushion was a lawful exercise of protective sweep pursuant to <u>Maryland v. Buie</u>, 494 U.S. 325 (1990).  <u>Buie</u> held that two types of warrantless searches incident to arrest are reasonable and lawful under the Fourth Amendment. First, "as an incident to the arrest, officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." <u>Id.</u> at 334. Second, police may undertake a broader search of the home, when they are aware of "articulable

facts which, when taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id.  The Buie Court noted

> the interest of officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack. The risk of danger in the context of an arrest in the home is as great as, if not greater than, it is in the on-the-street or roadside investigatory encounter.... A protective sweep occurs as an adjunct to the serious step of taking a person into custody for the purposes of prosecuting him for a crime. Moreover, unlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his adversary's "turf." An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings.

Id. at 333.

Our Circuit Court of Appeals has construed the first kind of Buie sweep to permit a search of rooms which adjoin the area where the defendant is arrested, even if the defendant was not apprehended in the adjacent space. As Buie held, "[t]he first type of sweep requires no probable cause or reasonable suspicion...." United States v. Ford, 56 F.3d 265 (D.C. Cir. 1995). In the Ford case, an FBI agent went to the defendant's apartment and was admitted by the defendant's mother. Id. at 266.  The agent observed the defendant in the apartment hallway and arrested him pursuant to an arrest warrant. Id.  The agent then walked into the bedroom immediately adjoining the hallway in which the defendant was arrested and saw in plain view a gun clip on the floor. Id.  The Court of Appeals held that "the agent was justified in looking in the bedroom, which was a space immediately adjoining the place of arrest. And once in the

bedroom, the agent could legitimately seize the gun clip which was in plain view." Id. The Court further explained that under Buie's first prong, "... as a precautionary matter and without probable cause or reasonable suspicion, [the FBI agent] was free to look in spaces immediately adjoining the place of Ford's arrest from which an attack could be immediately launched." Id. at 270.

The D.C. Circuit applied a similar analysis to the first Buie sweep in In re Sealed Case 96-3167, 153 F.3d 759 (D.C. Cir. 1998), where the defendant was detained by a police officer in a large bedroom on the second floor of his house. Id. at 763. The officer later "entered a small bedroom on the second floor, adjacent to the room in which he had apprehended the defendant" where he observed suspected crack cocaine. Id. Significantly, the officer never saw the defendant go in or out of the second bedroom; its significance was merely its geographic proximity to the large bedroom where the defendant was detained. The D.C. Circuit affirmed the denial of the defendant's motion to suppress the narcotics found in the small bedroom, holding that the officer's actions were lawful under the first prong of Buie, noting that the small bedroom "'was only a few feet from the larger bedroom door and only a few feet from the top of the stairs,' and 'was a space from which an attack could be launched.'" Id. at 770.

In United States v. Henry, 48 F.3d 1282 (D.C. Cir. 1995), the D.C. Circuit sanctioned a protective sweep of an apartment during the execution of an arrest warrant even though the suspect had been apprehended outside the building. See 48 F.3d at 1285.  This Court explained that it would be improper to limit the Supreme Court's holding in Buie, to situations where suspects are arrested inside their homes. Id. at 1284.  Instead, the appropriate inquiry should be: "[d]id articulable facts exist that would lead a reasonably prudent officer to believe a sweep was required to protect the safety of those on the arrest scene?" Id. Because 'it would be unreasonable

5

to require that police officers take unnecessary risks in the performance of their duties,' the sweep of the suspect's apartment was justified to ensure that none of his copatriates whom the officers had reason to believe were lurking within could ambush them. Id. at 1285.

In this case, the CARTF members had detained the defendant and had placed him in handcuffs. While CARTF members were attempting to obtain additional information from Mr. Kerrick, Sr. before leaving the apartment, they needed to keep the defendant secured by having him sit on the living room couch. Before placing him on that couch, the CARTF members looked underneath the couch cushions to ensure that there was no weapon or dangerous object that would be within the defendant's arms reach while he was sitting on the couch. Such a search is in line with the holding in Buie and its progeny, because in this case the CARTF members were ensuring that the defendant would not have access to a weapon that he could use to attack them. The CARTF members were simply ensuring that they were not placing themselves in an unnecessarily risky situation while performing their duties.

Under the same rationale expressed by the Supreme Court in Buie and its progeny, the CARTF members had the authority to conduct a protective sweep of the defendant's bedroom. As discussed above, the Supreme Court held in Buie, and the D.C. Circuit Court has held in Ford, Henry, and In re Sealed Case 91-3167, that the police are able to perform a protective sweep of rooms adjoining where a defendant was arrested when executing an arrest inside of a home. When the CARTF members entered the room in which the defendant had been staying they observed in plain view on top the entertainment center in the bedroom (1) a bag containing suspected crack cocaine, (2) a bag containing suspected marijuana, and (3) a box of ammunition. Additionally, and also in plain view, the CARTF members observed and recovered a high

capacity magazine feeding device in the corner of the bedroom on top of a box. All of these items would have been legitimately recovered as part of a protective sweep under Buie and its progeny.

### B. Defendant Lacked A Reasonable Expectation of Privacy In The Apartment

As a threshold matter, defendant's Fourth Amendment claim fails because he lacks standing to challenge the police entry and search of the Ames Street apartment. The right to object to searches and seizures is personal, and can be invoked only at the instance of one whose rights were allegedly infringed by the challenged search and seizure. See United States v. Salvucci, 448 U.S. 83 (1980). The apartment in which the defendant was arrested was leased to Mr. Kerrick, Sr. The defendant does not even allege in his motion that he resided in the apartment. A defendant claiming the protection of the Fourth Amendment bears the burden of showing that "his own rights were violated by the challenged search or seizure." Rakas v. Illinois, 439 U.S. 128, 131 n.1 (1978); accord Rawlings v. Kentucky, 448 U.S. 98, 104-05 (1980). Unless the defendant can show that he had "a legitimate expectation of privacy in the invaded place," Rakas, 439 U.S. at 143, he has no standing to challenge the alleged "search," and, thus, his motion must be denied. A "subjective expectation of privacy is legitimate if it is 'one that society is prepared to recognize as reasonable.'" Minnesota v. Olson, 495 U.S. 91, 95 (1990) (citation and internal quotation marks omitted).

### C. Even If The Defendant Has Standing, The Defendant's Father Possessed Sufficient Authority To Consent To The Search, Rendering the Search Based On Valid Consent

In any event, the issue of standing is rendered academic by the fact that Mr. Kerrick, Sr., the lessee and a resident of the apartment, advised the CARTF members that the defendant was

in his apartment after learning that they had an arrest warrant for the defendant, and then gave the CARTF members consent to search the apartment. A police search pursuant to voluntary consent is a well-established exception to the search warrant requirement. See Schneckloth v. Bustamonte, 412 U.S. 218, 219, 245-246 (1973) (third party consent constitutionally valid). Even assuming, arguendo, that both Mr. Kerrick, Sr. and the defendant possessed common authority over the apartment, consent by any single occupant renders the search lawful. "[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationsip to the premises or effects sought to be inspected." See United States v. Matlock, 415 U.S. 164, 171 & n.7 (1974) ("it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right ... "); Welch v. United States, 466 A.2d 829, 844 (D.C. 1983) ("permission for the search need not be obtained from the defendant; it is sufficient if the consent to search was obtained from a third party 'who possessed a common authority over or other sufficient relationship to the premises or effects sought to be inspected'"); United States v. Harrison, 679 F.2d 942, 946-947 (D.C. Cir. 1982) (wife with free access to home could consent to search of unmarked contained in the basement). Courts have found common authority on much more slender bases than the clear record in this case. See, e.g., Illinois v. Rodriguez, 497 U.S. 177, 186- 187 (1990) (although third party in fact had just moved out of the apartment, officers were entitled to rely on her consent to search where she had a key, referred to the apartment as "ours," and stated that she maintained some property there).

The government bears the burden of establishing that consent to search the apartment was freely and voluntarily given to the police. <u>Florida v. Royer</u>, 460 U.S. 491, 497 (1983). In determining whether Mr. Kerrick, Sr.'s consent was truly voluntary, the Court must consider whether, taking into account the totality of the circumstances surrounding the encounter, the conduct of the police would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." <u>Florida v. Bostick, 501 U.S. 429, 434</u> (1991) (citing <u>Michigan v. Chesternut</u>, 486 U.S. 567 (1988)). For purposes of this analysis, a "reasonable person" means a reasonable innocent person. <u>Bostick</u>, 111 S.Ct. at 2388. See also <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 241 (1973).

In evaluating whether Mr. Kerrick, Sr. voluntarily consented to the search of his apartment, the Court must assess the totality of the circumstances, including the characteristics of the accused and the details of the interaction between the police and the consenting party. <u>Schneckloth</u>, supra; <u>United States v. Watson</u>, 423 U.S. 411 (1976). Here, Mr. Kerrick, Sr. was fully cooperative with the police. Indeed, Mr. Kerrick, Sr. executed a consent to search form provided by the officers and expressed absolutely no hesitation whatsoever.

WHEREFORE, the government respectfully requests that the defendant's motion to suppress evidence be denied.

Respectfully Submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

Louis Ramos
Assistant United States Attorney
D.C. Bar Number 472-176
555 4th Street, N.W. - Room 4243
Washington, D.C. 20001
(202) 305-2195

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No.: 07-111 (RMU) |
| | : | |
| v. | : | |
| | : | |
| **MAURICE KERRICK** | : | |
|    **Defendant.** | : | |
| _____ | : | |

**ORDER**

Upon consideration of defendant's motion to suppress physical evidence, it is hereby

**ORDERED** that defendant's motion is **DENIED.**

**SO ORDERED.**

_____
THE HONORABLE RICARDO M. URBINA
UNITED STATES DISTRICT JUDGE

DATE: